UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>JAMES WILLIAM LULL<br><br>    Debtor. | Case No.: 06-00898<br>(Chapter 7) |
| RONALD K. KOTOSHIRODO,<br>CHAPTER 7 TRUSTEE,<br><br>    Plaintiff,<br><br>vs.<br><br>WILLIAM R. HANCOCK and KAPAA 382 LLC, a Hawaii Domestic Liability Company,<br><br>    Defendants. | Adv. Pro. No. 07-90072<br><br><br><br><br>Trial: May 18 - 22, 2009 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. INTRODUCTION

This is an adversary proceeding in bankruptcy in which Plaintiff, as trustee in bankruptcy of the estate of James William Lull ("Debtor" or "Lull"), seeks to recover from defendants Kapaa 382 LLC ("K382") and William R. Hancock ("Defendant" or "Hancock") an allegedly voidable preferential transfer, pursuant to 11 U.S.C. §§ 547 and 550. Plaintiff has already obtained final judgment by default against K382. Dkt. no. 47.

Count IV of the First Amended Complaint also seeks alternative relief against Hancock under state law. Both the preference claim and the state law claim are based upon a $1 million payment made by Debtor on account of a debt guaranteed by both Debtor and Hancock. The state law claim, based upon contribution or restitution, is for $500,000, which is one-half of the amount of the payment by the debtor.

Trial was conducted on May 18, 19, 20, 21, and 22, 2009. Ke-Ching Ning, Michael A. Lilly, and Stephen A. Jones, all of Ning Lilly & Jones, appeared for plaintiff, Ronald K. Kotoshirodo, the trustee in bankruptcy ("Plaintiff" or "Trustee"). Nenad Krek, Carlsmith Ball LLP, represented Hancock.

Shortly after conclusion of the trial, the parties advised the court that they had reached a settlement of this matter. They were unable to finalize a settlement. Thereafter, the parties submitted post-trial briefs.

The scope of the trial was limited by the parties' pre-trial stipulation, Dkt. no 146, which states:

> Plaintiff and Defendant stipulate that the only remaining issue for trial in this case is whether Defendant benefited, within the meaning of 11 U.S.C. § 547(b)(1) and (5), from Debtor James Lull's payment of $1 million on or about January 24, 2006. Completely without prejudice to that issue and any evidence or argument concerning that issue, the parties stipulate that the other elements of a voidable preference under 11 U.S.C. § 547(b)(2), (3), and (4) have been established solely for the purposes of this proceeding.

2

After consideration of the evidence and testimony presented at trial and the arguments of counsel, the court makes the following findings of fact and conclusions of law.

## II. **FINDINGS OF FACT**

1. On December 8, 2006, Lull filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii.

2. Lull died shortly before commencement of the trial of this adversary proceeding. At the time of his death, Lull was awaiting sentencing the United States District Court for the District of Hawaii, Cr. No. 08-00564 SOM, for defrauding many of his creditors. It is undisputed that unsecured creditors in the Lull bankruptcy case will not receive payment of 100% of their claims.

3. On December 8, 2006, Plaintiff was appointed trustee in bankruptcy in Lull's bankruptcy case by the Office of the United States Trustee.

4. At all relevant times before Lull filed his bankruptcy petition, Lull and Hancock were equal co-owners of Kauai Lease and Loan Ltd. ("KLL"), a Hawaii corporation.

5. KLL was the managing partner of K382, a Hawaii domestic limited liability company. K382 is a named defendant in this adversary proceeding.

6. K382 was the owner and developer of a condominium project called Kulana. The Kulana project is located on the island of Kauai. The condominium lots at Kulana are vacant land, for the construction of single family residences.

3

7. The Kulana project started in late 1998 or early 1999. Due to financial, legal and regulatory problems, Kulana remains incomplete to this day. Some lots have been sold, and an association of apartment owners (the "AOAO") has been formed, but construction of infrastructure, including roads, utilities and amenities, has never been completed. No owners have been able to obtain building permits to build homes on their lots.

8. Pursuant to a $9 million promissory note (the "Mowry note") dated, July 1, 2004 (Exhibit no. 2010), K382 was indebted to three trusts created by William F. Mowry and Martha J. Mowry, the R.S. Mowry Trust, the William Mowry Trust, and the Martha Mowry Trust (collectively, "Mowry"). The note bears a due date of July 1, 2005.

9. Debtor and Hancock were both guarantors of the $9 million note. Upon default by K382, Mowry had the right to proceed directly against either or both of the guarantors for the full amount owing.

10. The debt represented by the Mowry note was not repaid by the due date. Pursuant to a letter agreement, dated January 20, 2006, between Mowry and K382, Mowry granted to K382 a loan extension, to July 31, 2006. One of the conditions of the loan extension was the payment to Mowry of $3 million of the principal sum owing from K382 to Mowry.

11. On January 24, 2006, Lull paid to Mowry $1 million, which was used toward the $3 million principal reduction payment specified in the January 20, 2006, letter agreement. Debtor's payment reduced the K382 debt to Mowry by $1

4

million and reduced the exposure of Lull and Hancock on their guarantees by $1 million. January 24, 2006, is within the 1year reach-back period for avoiding preferential transfers to insiders, as that term is defined in 11 U.S.C. § 101(31). For purposes of this adversary proceeding, Hancock's status as an insider is undisputed.

12. In addition to the $1 million payment by Debtor, Mowry received the $2 million balance through other transactions. The cumulative result of Lull's $1 million payment and the other transactions was a reduction of the balance owing on the Mowry note from $9 million to $6 million.

13. The K382 debt to Mowry was secured by the Kulana real property, pursuant to a mortgage dated July 9, 2004. The mortgage was recorded on August 3, 2004. Mowry had no security interest in any personal property of K382.

14. The K382 debt to Mowry was not secured by any property owned by Lull.

15. When Lull paid $1 million to Mowry, he was also indebted to K382. On March 27, 2007, K382 filed proof of claim No. 51 in the underlying bankruptcy case, claiming that it is owed over $2.5 million by Lull. The default judgment against K382 in this adversary proceeding is based upon the theory that Lull's $1 million payment was preferential, under 11 U.S.C. § 547, as to K382. Dkt. no. 46, Conclusion of Law no. 2.

U.S. Bankruptcy Court - Hawaii   #07-90072   Dkt # 252   Filed 07/23/09   Page 5 of 12

16. The value of the Kulana real property on January 24, 2006, the date of Lull's $1 million payment to Mowry, is at issue. Hancock alleges that he received no benefit from Lull's payment to Mowry, because K382's $9 million obligation to Mowry was fully secured by Mowry's mortgage lien against the Kulana property. Both Plaintiff and Defendant presented the testimony of appraisers, who qualified as expert witnesses.

17. Using a land residual approach, plaintiff's appraiser testified that the Mowry mortgage lien against K382's Kulana real property was undersecured on January 25, 2006, the date of Lull's $1 million payment to Mowry. The K382 debt to Mowry on the transfer date was $9 million, plus accumulated interest, and the value of the real property, less costs of completion of infrastructure construction, was estimated to be $7,540,000. On the valuation date, K382 may have had over $7 million available to apply toward completion of construction, but Mowry had no security interest in any personal property of K382. Therefore, any money that K382 may have had for the completion of construction was not part of Mowry's collateral.

18. Defendant's appraiser valued the 'aggregate retail market value' of the Kulana property at $22,495,000. This approach, 'per instructions from the client', assumed that the project was completed, but the project was not completed and remains incomplete to this date.

U.S. Bankruptcy Court - Hawaii   #07-90072   Dkt # 252   Filed 07/23/09   Page 6 of 12

19. Appraising individual lots or the entire project is complicated by the fact that K382, by the use of illusory rebates, falsely inflated sales prices of some of the lots that were sold. There were no rebates to lot buyers. Dollar amounts were added to and subtracted from closing documents in order to mislead prospective purchasers or their real estate professionals by the creation of artificlly high sales prices. K382 reported its inflated sales prices to the County of Kauai tax assessor and to listing services used by real estate brokers.

20. On May 1, 2007, Mowry assigned its interest in the K382 note and mortgage to Hancock and others. (Exhibit no. 2011. The note was originally for $9 million, but that balance was reduced by the $3 million paid to Mowry pursuant to the January 20, 2006 extension agreement. Part of that $3 million was the $1 million paid by Lull to Mowry.

21. On May 22, 2008, judgment by default against K382 was entered in this adversary proceeding. Dkt. no. 47. The amount of the judgment is $1,024,644.52. Plaintiff has recovered $13,274.34 on account of that judgment.

## III. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

1. This is a core proceeding in bankruptcy. 28 U.S.C. § 157 (b)(2)(F). Venue is proper.

### B. Elements of an avoidable preferential transfer

2. The stipulation of the parties, Dkt. no. 146, establishes, against Hancock, the elements of subsections (b)(2), (3), and (4) of 11 U.S.C. § 547,

7

concerning voidable preferential transfers:

    a. § 547(b)(2) - The transfer was for or on account of an antecedent debt owed by the debtor before the transfer was made.

    b. § 547(b)(3) - The transfer was made while the debtor was insolvent.

    c. § 547(b)(4)(B) - The reach-back period is one year, because Hancock was an insider.

### C. Benefit to Hancock

3. Lull's $1 million payment to Mowry on January 24, 2006, was beneficial to K382 and to Hancock. K382's debt to Mowry was reduced by $1 million. The exposure of Hancock on his guarantee of the $9 million note was reduced by $1 million.

4. On January 24, 2006, Mowry's claim against K382 was secured by a mortgage on real property owned by K382, the Kulana property. Mowry's claim against K382 was undersecured, as the Kulana property was worth less than $9 million.

5. Plaintiff's appraiser's valuation of the Kulana property at less than $9 million is accepted as an accurate estimate of the value of that real property on January 25, 2006. Defendant's appraiser, following 'instructions from client', unrealistically assumes that the still incomplete project had been completed on January 25, 2006. Defendant's estimated value of over $22 million is far too high.

8

6. Mowry's collateral was limited to the real property subject to its mortgage. Mowry had no security interest in any of K382's personal property. Therefore, any cash or other property owned by K382 on January 24, 2006, would not increase the value or amount of Mowry's collateral.

7. Since Mowry was undersecured at the time of Debtor's $1 million payment, that payment was beneficial to Hancock. The payment reduced Hancock's exposure on his personal guarantee of the K382 debt to Mowry.

8. There is a second, and equal, reason why Debtor's $1 million payment was beneficial to Hancock. The reason is that Mowry had no lien on any property of Debtor at the time of the payment. Payments on account of debts that are secured, but not by property of the estate, are avoidable. Debtor's $1 million payment to Mowry on January 24, 2006, reduced his personal estate by $1 million. That amount is recoverable in the interest of equalizing distribution among Debtor's creditors.

9. For purposes of 11 U.S.C. § 547(b)(1), Lull's $1 million payment to Mowry on January 24, 2006, was beneficial to Hancock.

10. The remaining element of an avoidable preference, whether Hancock received more from the than he would have received had the transfer not occurred and Hancock had received a distribution from Lull's chapter 7 bankruptcy estate, is also satisfied, because unsecured creditors will not receive full payment claims. 11 U.S.C. § 547(b)(5).

U.S. Bankruptcy Court - Hawaii   #07-90072   Dkt # 252   Filed 07/23/09   Page 9 of 12

### D. Judicial Estoppel

11. The fact that Plaintiff obtained, in this adversary proceeding, a $1 million default judgment against defendant K382 does not estop Plaintiff from obtaining a judgment against Hancock, based upon the same transaction, the $1 million payment from Lull to Mowry on January 24, 2006. A single payment can be beneficial to numerous parties, including the payor, payee, and guarantors.

12. The findings of fact concerning the default judgment against K382 specifically note that Debtor authorized use of the $1 million as "partial payment on K382's debt to Mowrys." Dkt. no. 45, finding no. 8.

13. The conclusion of law that the $1 million payment by Lull to or for the benefit of K382 and on account of an antecedent debt (Dkt. no. 45, conclusion no. 3) does not insulate Hancock from preference liability, if all of the elements of an avoidable preference are proven as to him. In this adversary proceeding, the parties have stipulated that the only issue to be tried is the question of benefit to Hancock. It has been proven that there was benefit to Hancock in the form of a $1 million reduction of his contingent liability as a co-guarantor, with Lull, of K382's $9 million debt to Mowry.

### E. State Law Contribution

14. Count IV of the First Amended Complaint seeks recovery from Hancock of some dollar amount as 'contribution' for his share of the $1 million payment made by Lull to Mowry. Since Lull and Hancock were co-guarantors of K382's $9 million debt to Mowry, Lull's payment reduced the exposure of both

10

U.S. Bankruptcy Court - Hawaii    #07-90072    Dkt # 252    Filed 07/23/09    Page 10 of 12

guarantors.

15. Hancock presented no evidence or testimony in opposition to this claim and the parties' stipulation of issues to be tried does not list the contribution claim.

16. Plaintiff's post-trial brief states that the recovery sought via Count IV is $500,000, or one-half of the amount of Lull's payment to Mowry. Dkt. no. 242, p. 20.

17. Defendant argues in his closing memorandum that Plaintiff is estopped to seek contribution from Hancock because of the default judgment in the adversary proceeding against K382. As explained above, the default judgment against K382 does not detract from the benefit that Hancock received from Lull's $1 million payment to Mowry. Plaintiff is not judicially estopped to recover from Hancock, by way of contribution, one-half of the $1 million payment that was beneficial to both co-guarantors.

18. Plaintiff's entitlement to judgment against Hancock under the avoidable preference theory of bankruptcy law and the contribution theory of state law overlap, but Plaintiff is entitled only to a single recovery on account of Lull's $1 million transfer on January 24, 2006.

## IV. JUDGMENT TO BE ENTERED

19. Debtor Lull's $1 million payment to Mowry on account of K382's $9 million debt to Mowry was beneficial to Hancock by reducing his exposure as a guarantor of the K382 debt by $1 million. The preferential transfer is avoidable

11

under 11 U.S.C. § 547 and recoverable from Hancock under 11 U.S.C. § 550.

20. Plaintiff is also entitled to judgment against Hancock, under state law for one-half of Lull's $1 million transfer, or $500,000, which was not contested at trial.

21. Judgment will be entered in favor of Plaintiff, as trustee in bankruptcy, and against Defendant Hancock, pursuant to these findings of fact and conclusions of law.

Dated: Honolulu, Hawaii. July 23, 2009.

_____
Lloyd King
United States Bankruptcy Judge